Hon. Marsha Pechman

1

2

3

4

5

6

7

8          UNITED STATES DISTRICT COURT
9          WESTERN DISTRICT OF WASHINGTON
                      AT SEATTLE

10  PATRICK CALLIARI, individually and
    as Representative of the Former              No. 2:08-CV-1111MJP
11  Shareholders of GCI Investments Inc., a      (Consolidated with 2:08-CV-1112MJP)
    Washington corporation,
12
                    Plaintiff,                   DECLARATION OF MIKE GORDY
13                                               IN OPPOSITION TO COUNTER-
                                                 CLAIM DEFENDANTS' MOTION
14           v.                                  FOR PARTIAL SUMMARY
                                                 JUDGMENT AS TO PLAINTIFF'S
15  SARGENTO FOODS INC.,                         COUNTERCLAIM AND IN SUPPORT
                                                 OF SARGENTO'S MOTION FOR
16                  Defendant/                   PARTIAL SUMMARY JUDGMENT
                    Counterclaim                 RE REBUTTABLE PRESUMPTION
17                  Plaintiff,

18           v.

19  PATRICK C. CALLIARI, FLORA
    DAMASIO, ANTOINNE IOANNIDES,
20  ANDREAS IOANNIDES, GAYLE K.
    GOODRICH, GILLIAN OLSON,
21  RICHARD J. OLSON, and BETTY
    CROUSE,

22                  Counterclaim
                    Defendants.
23

24       I, MIKE GORDY, declare under penalty of perjury that the following statements

25  are to the best of my knowledge true and correct:

26

DECLARATION OF MIKE GORDY (No. 2:08-CV-
1111MJP) – Page 1

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1.     I am currently the President of the Food Ingredient Group of Sargento Foods Inc., based in Plymouth, Wisconsin. If called to testify, I could and would testify to the facts stated herein.

2.     Portionables is a food manufacturer based in Bellingham, Washington. Portionables manufactures frozen sauce pellets at its two production facilities—one located in Bellingham, and the other in North Sioux City, South Dakota. The sauce pellets are typically incorporated into other food products. For example, the Alfredo sauce in Bertolli brand frozen pasta products is made by Portionables in Bellingham and sold to Unilever, which owns the Bertolli brand.

3.     Sargento is a family owned company based in Plymouth, Wisconsin. Sargento is a manufacturer of premium quality cheeses and other food products. Prior to 2007, Sargento had explored the possibility of expanding its product line to include frozen sauces. It identified Portionables as a possible acquisition target to facilitate Sargento's entry into the frozen sauce market. Sometime in December 2006, executives at Sargento contacted Portionables about buying the company. Negotiations ensued.

4.     Following Sargento's acquisition of Portionables, Patrick Calliari remained President of Portionables and, pursuant to the parties' Stock Purchase Agreement ("SPA"), Calliari was to remain in operational control of Portionables subject to certain limitations set forth in the SPA. Under the SPA, if Calliari and Sargento found themselves in a dispute over the operation of Portionables, the parties could submit the dispute to mediation before a neutral third-party mediator, who would issue written recommendations to the parties if they were unable to resolve the dispute during mediation.

5.     When disputes regarding Calliari's operational control surfaced, the parties engaged The Hon. James E. Sullivan (Ret.), a former judge in Illinois, to conduct the mediation. The mediator took written submissions from Sargento and Calliari and held an

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    in-person mediation in Chicago on May 21, 2008.  The issues presented to Judge Sullivan

2    by the parties included the following:  (1) Calliari's exclusion from Unilever contract

3    negotiations, (2) Sargento's alleged interference with Portionables's relationship with

4    Birdseye Foods, (3) Sargento's negotiations to resolve a contentious dispute with

5    Belllingham Cold Storage ("BCS", Portionables's landlord in Bellingham) regarding the

6    BCS lease and Calliari's plan to implement direct shipping from the BCS facility, (4) the

7    SAP software implementation process, and (5) various other demands and requirements

8    imposed by Sargento on Calliari and his Portionables management team, which Calliari

9    viewed as unreasonable.

10        6.      When the mediation failed to result in an agreed resolution, Judge Sullivan

11   issued written recommendations on June 20, 2008.  In his written recommendations, Judge

12   Sullivan concluded that all of Calliari's complaints about loss of operational control

13   lacked merit, and that Sargento's actions in that regard were fully justified under the

14   circumstances and consistent with the terms of the SPA and Calliari's Employment

15   Agreement.  Judge Sullivan did not recommend that Sargento take any corrective action

16   toward Calliari.

17        7.      In addition to the $19 million in cash paid up front, the SPA provides that

18   the Shareholders may be entitled to additional compensation ("Contingent Payment") if

19   Portionables achieves a stated earnings threshold during the 20 months following the

20   closing.  On March 12, 2009, Sargento sent the Contingent Payment Report to the

21   Shareholders notifying them that Sargento had determined that no Contingent Payment

22   was due under Section 1.5 of the SPA because Portionables did not meet the earnings

23   threshold.

24        8.      The production capacity of the Portionables, Inc. ("Portionables") plants in

25   Bellingham, Washington and North Sioux City, South Dakota were both important

26   considerations for Sargento in deciding whether to purchase Portionables from the

DECLARATION OF MIKE GORDY (No. 2:08-CV-
1111MJP) -- Page 3

1   Shareholders and how much to pay for it. For a given set of sauce products, a plant that
2   produces at a faster rate is more valuable and more desirable than a plant that produces at
3   a slower rate.

4       9.      The Shareholders have argued that it is unreasonable for Sargento to be
5   claiming that the Shareholders warranted that the South Dakota plant and equipment was
6   adequate to produce four times the volume that it had actually produced the year before
7   the acquisition. But it is neither fair nor meaningful to compare the 9-million pound
8   historical volume of the South Dakota plant to the 40-million pound represented capacity
9   of that plant. The former is primarily a measure of past customer demand, while the latter
10  is a measure of potential production (and therefore revenue generation) capability.
11  Obviously, the latter is what Sargento was primarily evaluating when deciding whether to
12  purchase the company and at what price.

13      10.     In regard to the Chianti Cheese litigation, Betty Crouse received notice of
14  the Bertolli/Unilever product recall in March 2006, when Unilever advised Portionables of
15  the allergen contamination and sent Portionables a copy of its demand letter to Chianti
16  Cheese. Twice in March 2006, an official from the United States Food and Drug
17  Administration ("FDA") visited the Portionables plant in Bellingham, Washington to
18  investigate the recall, interview various Portionables employees, and inspect related
19  documents.

20      DATED this 10th day of August, 2009, at Seattle, Washington.

22                                                      MIKE GORDY

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

2429-001 vh100603 8/10/09

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## CERTIFICATE OF SERVICE

I certify that on August 10, 2009, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Brad Fisher
Davis Wright Tremaine
1201 Third Avenue, Suite 2200
Seattle, Washington 98101-3045
bradfisher@dwt.com

Michael A. Goldfarb
Felix A. Luna
Peterson Young Putra
1501 4th Avenue, Suite 2800
Seattle, Washington 98101
goldfarb@pypfirm.com
luna@pypfirm.com

Jeffrey S. Miller
Foster Pepper, PLLC
1111 Third Avenue, Suite 3400
Seattle, Washington 98101-3299
milje@foster.com

DATED this 10th day of August, 2009.

By: _s/ David A. Linehan_____
David A. Linehan, WSBA No. 34831

DECLARATION OF MIKE GORDY (No. 2:08-CV-1111MJP) – Page 5

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

2429-001 vh100604 8/10/09