```
 1                  UNITED STATES DISTRICT COURT

 2              WESTERN DISTRICT OF WASHINGTON AT SEATTLE

 3   PATRICK CALLIARI,             )
     individually and as           )
 4   Representative of the         )  Case No. C08-1111MJP
     Former Shareholders of GCI    )  (Consolidated with
 5   INVESTMENTS, INC., a          )  C08-1112MJP)
     Washington Corporation,       )
 6                                 )  SEATTLE, WASHINGTON
        Plaintiff,                 )  December 14, 2009
 7                                 )
     v.                            )
 8                                 )
     SARGENTO FOODS, Inc.,         )
 9                                 )
                                   )
10   Defendant/Counterclaim        )
     Plaintiff,                    )
11                                 )
     v.                            )
12                                 )
     PATRICK C. CALLIARI, et       )
13   al.,                          )
                                   )
14      Counterclaim Defendants.   )

15              VERBATIM REPORT OF PROCEEDINGS
            BEFORE THE HONORABLE MARSHA J. PECHMAN
16                UNITED STATES DISTRICT JUDGE

17   APPEARANCES:

18    For the Plaintiff:    MR. MICHAEL GOLDFARB
                            MR. BRAD FISHER
19
      For the Defendant:    MR. ROBERT SULKIN
20                          MR. DAVID LINEHAN

21
      Reported by:          Kari McGrath, CCR, RMR, CRR
22                          Federal Court Reporter
                            206.370.8509
23                          kari_mcgrath@wawd.uscourts.gov

24
     Proceedings recorded by mechanical stenography, transcript
25   produced by Reporter on computer.
```

PROCEEDINGS
_____

THE COURT: Please be seated. Counsel, I'm told we have a verdict. Are you ready to have them come in?

MR. SULKIN: Yes, your Honor.

MR. GOLDFARB: Yes, your Honor.

THE COURT: Okay. Let's go get them, please. Mr. Calliari is not with us?

MR. FISHER: He's ill with food poising.

THE COURT: Well, that's too bad.

(Jury enters courtroom.)

THE COURT: Please be seated. Could the foreperson please identify themselves?

Mr. Burwell. I've been told that this jury has reached a verdict, is that correct?

JUROR NO. 2: Yes, we have, your Honor.

THE COURT: Would you please hand the verdict form to Ms. Miller.

In the matter of Patrick Calliari versus Sargento Foods, we, the jury, finds as follows: Did Sargento materially breach the Stock Purchase Agreement by interfering with Mr. Calliari's operational control?  Answer:  No.

Second question:  Did Sargento materially breach the employment agreement by interfering with Mr. Calliari's operational control?  Answer:  No.

```
 1       Dated the 14th day of December and signed by the presiding
 2   juror, Mr. Burwell.
 3       Ladies and gentlemen, I'm going to be doing something that
 4   is called polling of the jury.  And that means that I'm going
 5   to be asking each of you if this is the verdict of the jury
 6   and if this is your personal verdict as to both questions.
 7   Obviously, what I'm looking for is to ensure that I have the
 8   9-2 split that I advised you was appropriate this morning.
 9       So, Mr. Bilow, is this the verdict of the jury?
10           JUROR NO. 1:  Yes, it is the verdict of the jury.
11           THE COURT:  Is it your personal verdict?
12           JUROR NO. 1:  This was not my personal verdict.
13           THE COURT:  As to both questions?
14           JUROR NO. 1:  As to both questions.
15           THE COURT:  Mr. Burwell, is this the verdict of the
16   jury?
17           JUROR NO. 2:  Yes.
18           THE COURT:  Is it your personal verdict?
19           JUROR NO. 2:  Yes.
20           THE COURT:  Mr. Delaney, is this the verdict of the
21   jury?
22           JUROR NO. 3:  Yes.
23           THE COURT:  Is it your personal verdict?
24           JUROR NO. 3:  Yes.
25           THE COURT:  Mr. Wallace, is this the verdict of the
```

```
 1   jury?
 2           JUROR NO. 4:  Yes.
 3           THE COURT:  Is it your personal verdict?
 4           JUROR NO. 4:  Yes.
 5           THE COURT:  Ms. Gordon, is this the verdict of the
 6   jury?
 7           JUROR NO. 5:  Yes.
 8           THE COURT:  Is it your personal verdict?
 9           JUROR NO. 5:  Yes.
10           THE COURT:  Ms. Maulding, is this the verdict of the
11   jury?
12           JUROR NO. 8:  Yes.
13           THE COURT:  Is it your personal verdict?
14           JUROR NO. 8:  Yes.
15           THE COURT:  Ms. Walberg, is this the verdict of the
16   jury?
17           JUROR NO. 9:  Yes.
18           THE COURT:  Is it your personal verdict?
19           JUROR NO. 9:  Yes.
20           THE COURT:  Ms. Morris, is this the verdict of the
21   jury?
22           JUROR NO. 10:  Yes.
23           THE COURT:  Is it your personal verdict?
24           JUROR NO. 10:  Yes.
25           THE COURT:  Mr. Riddick, is this the verdict of the
```

```
 1   jury?
 2          JUROR NO. 11:  Yes.
 3          THE COURT:  Is it your personal verdict?
 4          JUROR NO. 11:  Yes.
 5          THE COURT:  Mr. Lawson, is this the verdict of the
 6   jury?
 7          JUROR NO. 12:  Yes.
 8          THE COURT:  Is it your personal verdict?
 9          JUROR NO. 12:  No.
10          THE COURT:  And, Ms. Moore-Rodriguez, is this the
11   verdict of the jury?
12          JUROR NO. 13:  Yes.
13          THE COURT:  Is it your personal verdict?
14          JUROR NO. 13:  Yes.
15          THE COURT:  Mr. Burwell, it appears to the court that
16   the vote of the jury was 9-2, for a total of 11.  Am I
17   correct?
18          JUROR NO. 2:  Correct.
19          THE COURT:  The verdict appears to be in proper form,
20   and it will be filed.
21      Ladies and gentlemen, you are now released from your
22   admonitions.  You may now speak to anybody that you would
23   like to about this case and say whatever you would like to
24   about this case.  It's entirely up to you.  You also don't
25   have to talk about it.  That's also entirely up to you.  But
```

if your friends and family members now ask you what you were doing at the federal courthouse, you can tell them what you were doing.

I want to thank you for your service and putting in your time and your effort and your attention. I know it taxes you and your families and your jobs and your finances. But you have done something that is very important for us here, because without jurors, we cannot have resolutions of disputes. And that's the way civilized governments work.

So I again thank you on behalf of all the judges. I thank you on behalf of the community that you live in. And if he were around, I think Thomas Jefferson might thank you, too.

So I hope you enjoyed being at the courthouse, doing my little art tour with me. If you have suggestions or ideas about how it is that we might make this experience more rewarding or more understandable, if you have comments about this particular case that you would like to share, we would like to hear it.

Does anyone have anything that they would like to say? Then you are excused, with my thanks. Thank you.

(Jury leaves courtroom.)

THE COURT: All right. Counsel, if you will please be seated for a moment. I should remind you that in federal court in this district you are not allowed to talk with jurors. That doesn't mean you should be rude to them if they

1  approach you.  And I certainly don't expect you to walk away.
2  But you may not seek them out, unlike state court.
3     Yes, Mr. Gentine.
4          MR. GENTINE:  Being from Wisconsin, I don't think
5  this is an issue.  But if they came up to us and said
6  something or asked us a question or anything, should we say,
7  we really shouldn't talk to you, or I just want to make sure
8  I understand for my own --
9          THE COURT:  Well, like I said, I don't expect you to
10 be rude to them.  But I would probably say:  In order to
11 speak with you about it, I would need the court's permission
12 to do so.  But if they come up to you and make a comment, I
13 don't expect you to turn your back on them either, okay?
14    All right.  There are a couple of things we need to take
15 care of.  What do I do with the pending motion to compel
16 arbitration?  And when do we enter judgment?
17         MR. GOLDFARB:  Your Honor, I think we need to resolve
18 the issues surrounding the arbitration.  As you know, there
19 were some issues that were briefed to the court on that.
20    I think we ought to get judgment entered in due course.
21 And I just wanted to put on the record that there are two
22 other issues that need to be addressed in the judgment.
23    There is just under 3 million dollars in escrow that was
24 disposed of by the court's rulings on summary judgment.  So
25 as part of the judgment, we would be looking for an order of

1  disbursal of those funds.
2      And, second, there was an attorneys' fee issue that
3  relates to the warranty claims that were resolved by the
4  court also on summary judgment.  We anticipate making a
5  motion on that issue as well.
6          THE COURT:  Okay.  Is all the briefing still
7  currently applicable in the motion to compel arbitration?
8          MR. SULKIN:  I believe it is, your Honor.
9          MR. GOLDFARB:  I think so, too, your Honor.  I think,
10 in light of this, I would like to go back and read it.  But
11 I'm fairly confident the issues haven't changed.
12         THE COURT:  Okay.  Then I'll pull it out.  I'll dust
13 it off again, and we'll take a look at it.
14     Mr. Sulkin, do you also believe that judgment should be
15 entered into now, or do I wait until after the arbitration?
16         MR. SULKIN:  I think it should be entered into now,
17 your Honor.
18         THE COURT:  Then can I at least ask you to meet and
19 confer and see if you can agree on a formal judgment?  And I
20 will pull out the compelling arbitration motion and take a
21 look at it.
22     You are not likely to get anything back from me, however,
23 before the end of the first week in January.
24         MR. SULKIN:  Understood, your Honor.
25         THE COURT:  Okay.  Does that change anything?  Do you

1  have one set, by the way?
2          MR. GOLDFARB:  No.  There is an arbitrator, but
3  that's as far as it's gone.  There's no schedule set at this
4  point.
5          THE COURT:  Okay.  And if you don't get that answer
6  from me, does that slow you down?  In other words, I'm trying
7  to figure out what to put on the top of the pile by the end
8  of the week.
9          MR. SULKIN:  Your Honor, I don't believe that waiting
10 a few weeks will matter one way or the other.  We want to get
11 this thing moving quickly and as expeditiously as possible.
12 So we can wait until the end of --
13         THE COURT:  Remind me what the issue is again.  I
14 thought it was as to timing, whether you were going to
15 arbitrate first or go to trial first.  We obviously went to
16 trial first.  But what's the other issue here?
17         MR. GOLDFARB:  The issue that's addressed in the
18 motion, your Honor, when you get kind of to the nub of it, is
19 this:  We were in discussions with the arbitrator about what
20 the rules of the arbitration were going to be, discovery and
21 so forth.  And that process was interrupted, in our view, by
22 the other side.  I'm sure they would disagree with that.  But
23 the arbitrator has not generated a final engagement letter.
24 And there were issues about discovery, timing, things of that
25 nature that were bound up in that issue.

```
 1          MR. SULKIN:  And from our perspective, your Honor.
 2  We're trying to get a date.  We believe, with due respect to
 3  Mr. Goldfarb, they are trying to put up barriers to getting
 4  that date.  So we want to get that thing moving.
 5          MR. GOLDFARB:  It's briefed, your Honor.  But the
 6  issue, to answer the court's question, the nub of the issue
 7  was should we be compelled to sign a draft arbitration
 8  letter, or should the arbitrator's process of negotiating
 9  that engagement letter with both sides be allowed to play
10  out, is really the essence of that motion.
11          THE COURT:  It's supposed to be easier.
12          MR. SULKIN:  I thought it was, too, your Honor.
13          MR. GOLDFARB:  So did I, your Honor.
14          THE COURT:  Okay.  All right.  Anything else that we
15  need to take care of?
16          MR. SULKIN:  No, your Honor.
17          THE COURT:  I'll get you that answer as soon as I
18  turn my attention to it.  But don't hold your breath before
19  Christmas, okay?
20     All right.  Anything else?  Mr. Sulkin, did you have
21  anything else that needs to be taken care of?
22          MR. SULKIN:  No, your Honor.
23          MR. GOLDFARB:  No, your Honor.
24          THE COURT:  Very good.
25     Mr. Gentine, safe travels back to Wisconsin.
```

1      MR. GENTINE:  Thank you.

2      THE COURT:  We'll be at recess.

3      (Proceedings adjourned.)

7                    **************

9                  C E R T I F I C A T E

11     I, Kari McGrath, CCR, CRR, RMR, Official Court
12  Reporter for the United States District Court in the Western
13  District of Washington at Seattle, do hereby certify that I
14  was present in court during the foregoing matter and reported
15  said proceedings stenographically.
16     I further certify that thereafter, I have caused
17  said stenographic notes to be transcribed under my direction
18  and that the foregoing pages are a true and accurate
19  transcription to the best of my ability.

22                         /S/   KARI McGRATH
23                         Kari McGrath, CCR, CRR, RMR
24                         Official Court Reporter